1   MICHAEL D. ABRAHAM (SBN 125633)
      *mabraham@bzbm.com*
2   STEPHEN C. STEINBERG (SBN 230656)
      *ssteinberg@bzbm.com*
3   CHAD E. DEVEAUX (SBN 215482)
      *cdeveaux@bzbm.com*
4   BARTKO ZANKEL BUNZEL & MILLER
    A Professional Law Corporation
5   One Embarcadero Center, Suite 800
    San Francisco, California 94111
6   Telephone: (415) 956-1900
    Facsimile:  (415) 956-1152
7
    Attorneys for Defendants
8   SUTTER BAY MEDICAL FOUNDATION,
    SUTTER BAY HOSPITALS (d.b.a. Alta Bates
9   Summit Medical Center), NEIL STOLLMAN,
    ROD PERRY, and PHILIP RICH
10

11                  UNITED STATES DISTRICT COURT

12         NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

13  RALPH PETERSON,                        Case No. 3:21-cv-04908-WHO

14                   Plaintiff,            **DEFENDANTS SUTTER BAY**
                                           **MEDICAL FOUNDATION'S AND**
15           v.                            **SUTTER BAY HOSPITALS' NOTICE**
                                           **OF SPECIAL MOTION AND MOTION**
16  SUTTER BAY MEDICAL FOUNDATION;         **TO STRIKE PORTIONS OF**
    SUTTER BAY HOSPITALS;                  **PLAINTIFF'S SECOND AMENDED**
17  NEIL STOLLMAN, M.D.;                   **COMPLAINT AS A STRATEGIC**
    ROD PERRY, M.D.;                       **LAWSUIT AGAINST PUBLIC**
18  PHILIP RICH, M.D.;                     **PARTICIPATION (CA CODE OF CIV.**
    CATHY L. LOZANO (Board Investigator);  **PROC. § 425.16); MEMORANDUM OF**
19  KRISTINA LAWSON (Board Member);        **POINTS AND AUTHORITIES IN**
    HOWARD KRAUSS, M.D. (Board Member);    **SUPPORT THEREOF**
20  RANDY HAWKINS, M.D. (Board Member);
    RICHARD D. FANTOZZI, M.D. (Board Member);  Date:       June 1, 2022
21  HEDY CHANG (Former Board Member);      Time:       2:00 p.m.
    DEV GNANADEV, M.D. (Board Member);     Courtroom: 2
22  RONALD LEWIS, M.D. (Board Member);     Judge:      The Hon. William H. Orrick
    LAURIE ROSE LUBIANO (Board Member);
23  ASIF MAHMOOD, M.D. (Board Member);     Trial Date:  None Set
    RICHARD THORP, M.D. (Board Member);
24  FELIX YIP, M.D. (Board Member);
    and DOES 1-10.
25
                     Defendants.
26

27

28

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

NOTICE OF MOTION AND MOTION ....................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.       INTRODUCTION ................................................................................................................ 1

II.      ANALYSIS ......................................................................................................................... 3

      A.      The Anti-SLAPP Statute .......................................................................................... 3

      B.      Prong 1: Plaintiff's SAC Is Subject to Anti-SLAPP Protection ............................... 4

            1.      Plaintiff Targets Speech Made in Connection with Medical Peer Review ... 5

                  a.      Speech in Connection with Medical Peer Review Is Protected ............. 5

                  b.      Plaintiff's State-Law Claims Target Peer Review Speech ..................... 5

            2.      Plaintiff Targets Activity Protected by California's Litigation Privilege ..... 7

                  a.      Plaintiff's Complaint Targets Protected Speech Because Section 47(b) Protects Statements Made in Connection with Peer Review ......... 7

                  b.      Plaintiff Targets Protected Speech Because Section 47(b) Immunizes a Hospital's Filing of Adverse Action Notices .................... 8

                  c.      Plaintiff Targets Protected Speech Because Section 47(b) Protects Declarations Filed in Litigation ............................................................... 9

                  d.      Plaintiff Targets Protected Speech Because Section 47(b) Protects the Act of Encouraging Others to File Complaints ................................... 9

            3.      Plaintiff Targets Conduct in Furtherance of the Exercise of the Right of Free Speech in Connection with an Issue of Public Interest ....................... 10

      C.      Prong 2: Plaintiff Cannot Establish a Probability of Success on the Merits ........... 12

            1.      Plaintiff Cannot Establish a Probability of Success Regarding His Peer Review and Adverse Action Report Allegations, His Allegations of "False Declarations" in Litigation, or His Allegations that Sutter "Encouraged" Others to File Complaints Against Him Because These Acts Are Subject to the Litigation Privilege's Absolute Protection ........... 12

            2.      Plaintiff Cannot Establish a Probability of Success Regarding His Defamation Claims ................................................................................... 13

                  a.      Plaintiff Must Prove Actual Malice ..................................................... 13

                  b.      Plaintiff Cannot Prove Actual Malice ................................................. 15

III.     CONCLUSION ................................................................................................................ 17

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**United States Supreme Court Decisions**

4

*Erie R.R. Co. v. Tompkins*
   304 U.S. 64 (1938) ........................................................................... 3

5

6

*Letter Carriers v. Austin*
   418 U.S. 264 (1974) ...................................................................... 3, 15

7

*Masson v. New Yorker Mag., Inc.*
   501 U.S. 496 (1991) ......................................................................... 16

8

9

*N.Y. Times Co. v. Sullivan*
   376 U.S. 254 (1964) ..................................................................... 14, 15

10

11

**Other Decisions**

12

*Abraham v. Lancaster Community Hosp.*
   217 Cal. App. 3d 796 (1990) .............................................................. 7

13

*Action Apt. Ass'n, Inc. v. City of Santa Monica*
   41 Cal. 4th 1232 (2007) .................................................................... 8

14

15

*Albertson v. Raboff*
   46 Cal. 2d 375 (1956) ....................................................................... 7

16

17

*Annette F. v. Sharon S.*
   119 Cal. App. 4th 1146 (2004) ......................................................... 15

18

19

*Austin v. McNamara*
   731 F. Supp. 934 (C.D. Cal. 1990) ..................................................... 8

20

*Bonni v. St. Joseph Health Sys.*
   11 Cal. 5th 995 (2021) ............................................................... *passim*

21

*Briggs v. Eden Council for Hope & Opp.*
   19 Cal. 4th 1106 (1999) .................................................................. 4, 7

22

23

*Cal. Eye Inst. v. Super. Ct.*
   215 Cal. App. 3d 1477 (1989) .......................................................... 11

24

25

*Campanelli v. Regents of Univ. of Cal.*
   44 Cal. App. 4th 572 (1996) ............................................................. 16

26

27

*Central Valley Hospitalists v. Dignity Health*
   19 Cal. App. 5th 203 (2018) ............................................................... 8

28

*Christian Res. Inst. v. Alnor*
    148 Cal. App. 4th 71 (2007) ................................................................... 14

*Clarke v. Hoek*
    174 Cal. App. 3d 208 (1985) ..................................................................... 5

*Espinoza v. City of Imperial*
    2009 WL 10671316 (S.D. Cal. Mar. 4, 2009) ...................................... 14

*GetFugu, Inc. v. Patton Boggs LLP*
    220 Cal. App. 4th 141 (2013) ................................................................ 16

*Hagberg v. Cal. Fed. Bank*
    32 Cal. 4th 350 (2004) .............................................................................. 9

*Haight Ashbury Free Clinics v. Happening House Ventures*
    184 Cal. App. 4th 1539 (2010) ................................................................ 4

*Hassan v. Mercy Am. River Hosp.*
    31 Cal. 4th 709 (2003) ............................................................................ 15

*Hughes v. Hughes*
    122 Cal. App. 4th 931 (2004) ................................................................ 16

*Institute of Athletic Motivation v. University of Illinois*
    114 Cal. App. 3d 1 (1980) ...................................................................... 14

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*
    140 Cal. App. 4th 515 (2006) ................................................................ 11

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*
    247 Cal. App. 4th 87 (2016) ............................................................ 13, 15

*Jacob B. v. Cnty. of Shasta*
    40 Cal. 4th 948 (2007) .............................................................................. 7

*Kashian v. Harriman*
    98 Cal. App. 4th 892 (2002) ............................................................. 7, 14

*Kenne v. Stennis*
    230 Cal. App. 4th 953 (2014) .................................................................. 4

*Kibler v. N. Inyo Cnty. Local Hosp. Dist.*
    39 Cal. 4th 192 (2006) ..................................................................... 2, 5, 6

*Laker v. Bd. of Trustees*
    32 Cal. App. 5th 745 (2019) ................................................... 4, 5, 8, 12

*Laub v. Horbaczewski*
    2019 WL 3492402 (C.D. Cal. July 30, 2019) ......................................... 3

*Ludwig v. Super. Ct.*
   37 Cal. App. 4th 8 (1995)....................................................................................... 3, 9, 10

*Matchett v. Super. Ct.*
   40 Cal. App. 3d 623 (1974)............................................................................................. 5

*McNair v. City & Cnty. of San Francisco*
   5 Cal. App. 5th 1154 (2016)......................................................................................... 13

*Melaleuca, Inc. v. Clark*
   66 Cal. App. 4th 1344 (1998)....................................................................................... 13

*Moore v. Conliffe*
   7 Cal. 4th 634 (1994)..................................................................................................... 7

*Navellier v. Sletten*
   29 Cal. 4th 82 (2002)..................................................................................................... 4

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*
   190 F.3d 963 (9th Cir. 1999)......................................................................................... 3

*PG&E v. Bear Stearns & Co.*
   50 Cal. 3d 1118 (1990)................................................................................................ 10

*Ringler Assoc. Inc. v. Maryland Cas. Co.*
   80 Cal. App. 4th 1165 (2000)....................................................................................... 16

*Robles v. Chalilpoyil*
   181 Cal. App. 4th 566 (2010)......................................................................................... 3

*Roemer v. Retail Credit Co.*
   3 Cal. App. 3d 368 (1970)........................................................................................... 14

*Rubin v. Green*
   4 Cal. 4th 1187 (1993)........................................................................................ 2, 7, 8, 9

*Rusheen v. Cohen*
   37 Cal. 4th 1048 (2006)................................................................................................. 7

*S.B. Beach Prop. v. Berti*
   39 Cal. 4th 374 (2006)................................................................................................... 3

*Salma v. Capon*
   161 Cal. App. 4th 1275 (2008)....................................................................................... 4

*Sonoma Media Inv., LLC v. Super. Ct.*
   34 Cal. App. 5th 24 (2019)........................................................................................... 11

*Stiger v. Flippin*
   201 Cal. App. 4th 646 (2011)....................................................................................... 16

*Total Call Int'l v. Peerless Ins. Co.*
  181 Cal. App. 4th 161 (2010) ................................................................ 4

*Yang v. Tenet Healthcare Inc.*
  48 Cal. App. 4th 939 (2020) ................................................................ 11

**Statutes and Regulations**

42 United States Code
  § 11133(a)(1) ................................................................................... 8

California Business and Professions Code
  § 805 .............................................................................. 2, 8, 12, 13

California Civil Code
  § 43.8 ................................................................................... 14, 15
  § 47(b) ................................................................................... *passim*
  § 47(c) ........................................................................................ 14

California Code of Civil Procedure
  § 425.16 (the "anti-SLAPP statute") ....................................... *passim*

45 Code of Federal Regulations
  § 60.12(a)(1)(ii) ................................................................................ 2

DEFENDANTS' SPECIAL MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 1, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Judge William H. Orrick in the United States District Court for the Northern District of California, Courtroom 2, located on the 17th Floor of the United States Courthouse at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Sutter Bay Medical Foundation and Sutter Bay Hospitals (collectively, "Sutter") will and hereby do move to strike all causes of action based on California state law that are pleaded in the Second Amended Complaint ("SAC") filed by Plaintiff Ralph Peterson ("Plaintiff") pursuant to California Code of Civil Procedure section 425.16 on the grounds that (1) the portions of the SAC targeted by this motion arise from acts in furtherance of Sutter's right of free speech or right to petition; and (2) Plaintiff cannot demonstrate a probability of prevailing on any of the causes of action.

This motion is based on this Notice of Special Motion to Strike and Special Motion to Strike, the accompanying Memorandum of Points and Authorities in Support of the Special Motion to Strike, the Request for Judicial Notice and Exhibits thereto ("RJN"), the pleadings and records on file in this action, any Reply in Support of the Special Motion to Strike, any oral argument before the Court, and any other matters the Court may request or consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Ralph Peterson's ("Plaintiff") Second Amended Complaint ("SAC") rests on five core allegations. First, he alleges that Defendants Sutter Bay Medical Foundation and Sutter Bay Hospital (collectively "Sutter") "filed, pursued, and perpetuated" a "Peer Review Action" against him which purportedly "forc[ed] him to resign" his admitting privileges to avoid "Peer Review … discipline." SAC ¶¶ 331, 71. Second, Plaintiff asserts that based on this proceeding, "Sutter prepared and published to the National Practitioner Data Bank" ("NPDB") and the Medical Board of California ("MBC") an "Adverse Action Report … stating [Plaintiff] had resigned to avoid further investigation into various quality of care complaints" *Id.* ¶¶ 72–73. Third, Plaintiff claims that Sutter filed "false declarations" during the lawsuit that he filed against Drs. Stollman and Perry (*id.* ¶¶ 181, 109, 220, 234, 332), in which the trial court granted an anti-SLAPP motion on

May 9, 2013, and entered judgment on the merits in favor of Drs. Stollman and Perry and against Plaintiff on September 12, 2013.[1] Fourth, Plaintiff alleges that Sutter engaged in trade libel by "ma[king] the defamatory statement" to "credentialing agents for [health insurance companies]" that Plaintiff had "unresolved disciplinary issues with various … peer review panels and the MBC" and by the MBC's "placing this information on its website" concerning Plaintiff's stipulated settlement with the MBC.[2] *Id.* ¶¶ 358–60, 331. Fifth, Plaintiff posits that Sutter tortiously "encouraged" a patient's estate to "fil[e] an unfounded … complaint" with the "[MBC … against [Plaintiff]" and to "file[] suit against [Plaintiff] in the Superior Court of California" for malpractice. *Id.* ¶¶ 87, 104–05. Based *entirely* on these allegations, the SAC asserts nine state law causes of action. But Hornbook law recognizes that California's anti-SLAPP statute, Code of Civil Procedure section 425.16, bars these claims in their entirety for several reasons.

First, these claims target speech in connection with medical "peer review" which is protected by the anti-SLAPP statute. *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 39 Cal. 4th 192, 198 (2006). Indeed, the acts of "subjecting [a physician to the] peer review process," any "defamat[ory] … statements concerning [the physician's] professional competence made in connection with [such] peer review [proceedings]" and the subsequent "reporting" of the proceedings "to the [MBC] and [NPDB]" *all* "fall within the scope of protected activity as defined by section 425.16." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1017–18 (2021).

Second, California Civil Code section 47(b)'s litigation privilege affords "absolute immunity" from any claim for "filing … in litigation." *Rubin v. Green*, 4 Cal. 4th 1187, 1195 (1993). As such, Plaintiff's claims that "Sutter [and] its peer review panel members" made "false declarations" in prior litigation fail as a matter of law. *See* SAC ¶¶ 332, 181, 109, 220, 234.

Third, section 47(b) and the anti-SLAPP statute provide absolute protection from liability for anyone "who supports and encourages the filing of a lawsuit" or other administrative

---

[1] Plaintiff's appeal was dismissed on December 30, 2015, and his writ of certiorari was denied on March 23, 2016. SAC ¶¶ 100, 107, 133, 135, 213–18; RJN 4 (May 9, 2013 Order re: Granting Special Motion to Strike); RJN 5 (Sept. 12, 2013 Judgment).

[2] Because Plaintiff gave up his privileges at Alta Bates with a peer review proceeding pending, he triggered mandatory reporting. Cal. Bus. & Prof. Code § 805; 45 C.F.R. § 60.12(a)(1)(ii).

complaint. *Ludwig v. Super. Ct.*, 37 Cal. App. 4th 8, 18 (1995). Thus, Plaintiff's assertion that Sutter tortiously "encouraged" a patient's estate to "fil[e] an unfounded … complaint" with the "[MBC] … against [Plaintiff]" and to "file[] suit against [Plaintiff] in the Superior Court" fails as a matter of law. *See* SAC ¶¶ 87, 104–05.

Finally, Plaintiff's trade libel claims—that Sutter "made … defamatory statements" to "credentialing agents" that he had "unresolved disciplinary issues with various … peer review panels and the MBC"—likewise enjoy absolute constitutional protection. *See* SAC ¶¶ 358–60, 331. This is so because "[t]he *sine qua non* of recovery for defamation ... is the existence of a falsehood." *Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974). Here, Plaintiff cannot make this showing because the statement was objectively *true*. Plaintiff admits that he was "subjected to … disciplinary investigations by Peer Review Panels" and that he "resign[ed]" his admitting privileges "under threat of Peer Review and 'MBC' discipline" while such proceeding was pending. SAC ¶¶ 71, 116. Thus, "unresolved disciplinary issues" existed because the peer review proceeding never reached a decision on the merits due to Plaintiff's resignation. *See id.*

## II.   ANALYSIS

### A.   The Anti-SLAPP Statute

The anti-SLAPP statute combats "strategic lawsuit[s] against public participation." *S.B. Beach Prop. v. Berti*, 39 Cal. 4th 374 (2006). "A SLAPP is a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Robles v. Chalilpoyil*, 181 Cal. App. 4th 566, 572 (2010). The statute subjects such suits to a "special motion to strike." *S.B. Beach*, 39 Cal. 4th at 377. It "applies to any cause of action … arising from any act … in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution…." *Laub v. Horbaczewski*, 2019 WL 3492402, at *11 (C.D. Cal. July 30, 2019). It is settled in the Ninth Circuit that "the twin purposes" of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)—"'discouragement of forum-shopping and avoidance of inequitable administration of the law'"—require "application of California's Anti-SLAPP statute in federal cases." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

The statute posits "a two-step process." First, "the court decides whether the defendant has

1   made a threshold showing that the challenged cause of action is one arising from protected

2   activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). To meet this burden, the defendant does

3   "not [need to] prove that the targeted [speech] is in fact constitutionally protected." *Haight*

4   *Ashbury Free Clinics v. Happening House Ventures*, 184 Cal. App. 4th 1539, 1548 (2010). Rather,

5   it merely must show that the suit targets speech of a type that "*can* be protected." *Kenne v. Stennis*,

6   230 Cal. App. 4th 953, 966 (2014) (emphasis added). If this showing is made, the burden shifts to

7   the plaintiff in prong two to present "evidence that is admissible at trial" that shows a "probability

8   of success on the merits." *Salma v. Capon*, 161 Cal. App. 4th 1275, 1289 (2008).

9     **B.**  **Prong 1: Plaintiff's SAC Is Subject to Anti-SLAPP Protection**

10     Prong one is satisfied when a complaint targets conduct that fits in any "categor[y] set out

11   in section 425.16, subdivision (e)." *Laker v. Bd. of Trustees*, 32 Cal. App. 5th 745, 759 (2019).

12   Here, this is shown for three reasons. First, Plaintiff targets speech in connection with medical

13   peer review, which is speech "in connection with" an "official proceeding authorized by law." Cal

14   Code of Civ. Proc. § 425.16(e)(2). Second, he targets conduct protected by California Civil Code

15   section 47(b)'s litigation privilege, which also constitutes speech connected to an "official

16   proceeding" and is "entitled to the benefits" of section 425.16(e)(2). *Briggs v. Eden Council for*

17   *Hope & Opp.*, 19 Cal. 4th 1106, 1114–15 (1999). Third, Plaintiff targets "conduct in furtherance

18   of the exercise of the … the constitutional right of free speech in connection with a public issue."

19   Cal. Code of Civ. Proc. § 425.16(e)(4).

20     Plaintiff's eleventh cause of action for "business disparagement," also known as trade libel,

21   explicitly sounds in defamation. Further, while his other state-law claims do not all explicitly use

22   the term "defamation," they are likewise all subject to constitutional protections applicable to

23   defamation. It is settled that "all injurious falsehood claims sound[] in defamation" regardless of

24   how they are "framed" and "are subject to requirements rooted in the First Amendment." *Total*

25   *Call Int'l v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 170 (2010). This "cannot be avoided by

26   creative pleading that affix[es] labels other than defamation to injurious falsehood claims." *Id.*

27   Each of Plaintiff's nine state law counts seeks damages for harm to his "reputation" and/or "his

28   medical practice." *E.g.*, SAC ¶¶ 315, 326, 337, 352, 361, 375, 380, 386, 402. Thus, First

Amendment limitations apply to *all* of his state law claims.

### 1.    Plaintiff Targets Speech Made in Connection with Medical Peer Review

#### a.    Speech in Connection with Medical Peer Review Is Protected

"[M]edical peer review proceedings fall within the compass of section 425.16(e)(2)" which "protects any written or oral statement or writing made in connection with an issue under consideration or review by" an "official proceeding authorized by law." *Bonni*, 11 Cal. 5th at 1012. This is because peer review is "mandated by statute" and thus "peer review proceedings are 'official proceeding[s]' within the meaning of section 425.16, subdivision (e)(2)." *Id.* at 1013. Thus, any "lawsuit arising out of a peer review proceeding is subject to a special motion under section 425.16." *Kibler*, 39 Cal. 4th at 198. This extends beyond formal proceedings to include preliminary and ancillary discussions relating to matters under review. *Laker*, 32 Cal. App. 5th at 770.

*Bonni* held that the plaintiff's claim that he was harmed by "statements [made] in connection with [peer review]" targeted "quintessential speech activities … protected under section 425.16, subdivision (e)(2)." 11 Cal. 5th at 1016. Such protection is critical because "[w]hen medical staff committees bear delegated responsibility for the competence of staff practitioners, the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical skills and their objectivity in regulating staff privileges." *Matchett v. Super. Ct.*, 40 Cal. App. 3d 623, 628 (1974). Indeed, peer review "supplies the foundation for public oversight of the medical profession." *Bonni*, 11 Cal. 5th at 1013. Accordingly, "[t]here is a strong public interest in supporting, encouraging and protecting effective medical peer review programs and activities." *Clarke v. Hoek*, 174 Cal. App. 3d 208, 220 (1985). Here, for the reasons explained below, the SAC targets protected speech in connection with a peer review proceeding.

#### b.    Plaintiff's State-Law Claims Target Peer Review Speech

In *Bonni*, the plaintiff alleged that the hospital and medical staff "injured him by subjecting him to a 'lengthy and humiliating peer review process'" that was brought to further an "illicit motive." 11 Cal. 5th at 1008, 1018. He further alleged that the defendants acted tortiously by

making "defamat[ory] … statements concerning [his] professional competence … in connection with the peer review [proceedings]" and by "reporting" the peer review proceedings "to the [MBC] and [NPDB]." *Id.* at 1017–18. The court found that all these acts constituted "protected activity under the anti-SLAPP law" because initiating and conducting peer review proceedings, any statements made during or in connection with such proceedings, and any subsequent reports to the MBC or NPDB constituted "'statement[s] or writing[s] made in connection with an issue under consideration' in an 'official proceeding.'" *Id.* The court further held that the plaintiff's assertions that the proceedings were initiated for an "illicit motive" were irrelevant because, when "the acts alleged in support of [a] plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply" in full force "[n]otwithstanding assertions of an illicit motive." *Id.* at 1008. These holdings doom Plaintiff's claims.

Likewise here, Plaintiff alleges that he "was subjected to … disciplinary investigations by Peer Review Panels" because "Sutter [and] its peer review panel members … filed, pursued and perpetuated … [the] Sutter Alta Bates Peer Review Action dated February 2, 2009" which caused him to "suffer damages to his … reputation." *See e.g.*, SAC ¶¶ 116, 331, 337. These allegations constitute the central predicate acts for each of his state law causes of action. *See e.g.*, *id.* ¶¶ 314, 321, 325, 331–32, 336–37, 346, 352, 358, 361, 367–68, 373, 380, 383, 386, 349. Plaintiff also seeks damages because "Sutter prepared and published to the [NPDB]" and MBC an "Adverse Action Report" as required by law "stating [Plaintiff] had resigned to avoid further investigation into various quality of care complaints" *Id.* ¶¶ 72–73.

But the acts of filing and "subjecting [a physician to the] peer review process," any "defamat[ory] … statements concerning [the physician's] professional competence made in connection with [such] peer review [proceeding]," and the subsequent "reporting" of the proceeding "to the [MBC] and [NPDB]" *all* "fall within the scope of protected activity as defined by section 425.16." *Bonni*, 11 Cal. 5th at 1017–18. Thus, Plaintiff's SAC "aris[es] out of a peer review proceeding" and "is subject to a special motion under section 425.16." *Kibler*, 39 Cal. 4th at 198. Thus, Sutter has met its burden under prong one of the anti-SLAPP analysis.

2.      **Plaintiff Targets Activity Protected by California's Litigation Privilege**

California Civil Code section 47(b) protects "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). Speech protected by section 47(b) is "entitled to the benefits of section 425.16." *Briggs*, 19 Cal. 4th at 1114–15. It applies to any communication that seeks "to achieve the objects" of pending or contemplated official proceedings "even though the [communication] is made outside the courtroom" or other location where proceedings are conducted "and no function of the [adjudicating body] or its officers is involved." *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 955 (2007). The privilege "encourage[s] open channels of communication without fear of being harassed subsequently by derivative tort actions." *Id.*

To further this purpose, "the privilege has been broadly applied"; it is also "absolute and applies regardless of malice." *Id.* It applies to any form of communication, including "allegations … disseminated by word of mouth." *Abraham v. Lancaster Community Hosp.*, 217 Cal. App. 3d 796, 805–06 (1990). This is because, as Justice Traynor famously recognized in *Albertson v. Raboff*, 46 Cal. 2d 375 (1956), virtually all communications "with 'some relation'" to official proceedings are "absolutely immune from tort liability." *Rubin*, 4 Cal. 4th at 1193. Thus, "[a]ny doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

a.      **Plaintiff's Complaint Targets Protected Speech Because Section 47(b) Protects Statements Made in Connection with Peer Review**

Section 47(b)'s "absolute protection" is "not … confined … to government proceedings." *Moore v. Conliffe*, 7 Cal. 4th 634, 653 (1994). In 1979, the California Legislature, by a "unanimous" vote, amended section 47(b) to "extend[] the [litigation] privilege to … quasi-judicial, [medical] peer review proceedings of private associations." *Id.* at 652–53. Thus, statements made in connection with "peer review proceedings conducted by *private* entities" enjoy the protection of section 47(b)'s "absolute privilege." *Id.* at 653 (emphasis added). And this protection extends broadly beyond the formal proceedings themselves rendering "absolutely

1  privileged" any "preliminary" or ancillary communications related to such proceedings. *Laker*, 32

2  Cal. App. 5th at 770. Section 47(b) likewise protects the basic act of "filing" a complaint

3  triggering official proceedings and conducting such proceedings. *Rubin*, 4 Cal. 4th at 1195.

4  Indeed, "no communication is more clearly protected by the litigation privilege than the filing [of

5  such a complaint]." *Action Apt. Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1249

6  (2007).

7       Here, for the reasons explained above, by seeking damages based on the allegation that

8  "Sutter [and] its peer review panel members … filed, pursued and perpetuated … [a] Peer Review

9  Action" against him,[3] and making this the core allegation of *all* of his state law causes of action,[4]

10  Plaintiff's SAC targets quintessential conduct protected by the litigation privilege. Accordingly,

11  for this reason too, Sutter has met its burden under prong one of the anti-SLAPP analysis.

12
13
      **b.**      **Plaintiff Targets Protected Speech Because Section 47(b) Immunizes a Hospital's Filing of Adverse Action Notices**

14       Plaintiff asserts that Sutter tortiously "prepared and published to the [NPDB]" and the

15  MBC an "Adverse Action Report stating [Plaintiff] had resigned to avoid further investigation into

16  various quality of care complaints." SAC ¶¶ 72–73. This claim likewise targets protected conduct.

17       Without exception, "California Business & Professions Code § 805 requires any

18  disciplinary action affecting a physician practicing in the state be reported to the [MBC]." *Austin*

19  *v. McNamara*, 731 F. Supp. 934, 937 (C.D. Cal. 1990). This obligation is triggered by a

20  physician's "resignation of privileges … after receiving notice of a pending peer review

21  investigation." *Central Valley Hospitalists v. Dignity Health*, 19 Cal. App. 5th 203, 208 (2018)

22  (citing Cal. Bus. & Prof. Code § 805(b–c)). In *Bonni*, the plaintiff asserted that the defendant acted

23  tortiously by "reporting" the termination of his privileges "to the [MBC and [NPDB]." 11 Cal.

24  5th at 1017. The court granted the hospital's anti-SLAPP motion with regard to these claims

25  because "[t]he reports … were required by law (see Bus. & Prof. Code, § 805, subd. (e); 42 U.S.C.

26  § 11133(a)(1))," and "are written statements to the state's licensing agency." *Id.* As such, filing

27
28
---
[3] SAC ¶ 331.

[4] *See id.* ¶¶ 314, 321, 325, 331–32, 336, 337, 346, 352, 358, 361, 367–68, 373, 380, 383, 386, 349.

such reports constituted protected petitioning activity. *Id.* Moreover, this absolute protection cannot be overcome by a plaintiff's "assertions of an illicit motive." *Id.* at 1008. Thus, again, Sutter has met its burden under prong one.

### c.   Plaintiff Targets Protected Speech Because Section 47(b) Protects Declarations Filed in Litigation

Plaintiff seeks damages based on the allegation that "Sutter [and] its peer review panel members" made "false declarations" in connection with the lawsuit that Plaintiff filed against Drs. Stollman and Perry. SAC ¶¶ 332, 181, 109, 220, 234. But the litigation privilege's absolute immunity applies to the acts of "filing … pleadings in … litigation." *Rubin*, 4 Cal. 4th at 1195. Plaintiff admits that the alleged "false declarations" were filed in his lawsuit against Drs. Stollman and Perry—which notably, ended with an anti-SLAPP motion being granted. SAC ¶¶ 332, 181, 109, 220, 234. Thus, again, Sutter has met its burden under prong one.

### d.   Plaintiff Targets Protected Speech Because Section 47(b) Protects the Act of Encouraging Others to File Complaints

Plaintiff seeks damages because Sutter allegedly "encouraged" a patient's estate to "fil[e] an unfounded … complaint" with the "[MBC] … against [Plaintiff]" and to "file[] suit against [Plaintiff] in the Superior Court." SAC ¶¶ 87, 104–05. This conduct too constitutes constitutionally protected petitioning activity.

It is axiomatic that the litigation privilege's absolute immunity applies to the act of "filing a complaint." *Rubin*, 4 Cal. 4th at 1195. It is also settled that the privilege protects any filing or other communication "intended to prompt an administrative agency … to investigate or remedy a wrongdoing." *Hagberg v. Cal. Fed. Bank*, 32 Cal. 4th 350, 362 (2004). This is because section 47(b) immunizes all communications "which may precede the initiation of formal proceedings" which are "authorized by law." *Id.*

"The right to petition the government or seek legal redress" protected by section 47(b) and the anti-SLAPP statute "does not confer legal protection solely on those persons formally addressing the governmental agency or formally filing a lawsuit." *Ludwig*, 37 Cal. App. 4th at 17. These statutes likewise protect anyone who "*induced* the actual [complainant] to file a lawsuit" or

seek administrative relief. *Id.* (emphasis added). This is so because "[i]f any person who induced another to bring a lawsuit" or file an administrative complaint "could be liable in tort, free access to the courts [and agencies] could be choked off with an assiduous search for unnamed parties." *PG&E v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1136 (1990).

*Ludwig* is particularly instructive on this point. There, the plaintiff alleged that the defendant "encouraged" two other parties to file "lawsuits" and raise complaints with an administrative agency under the California Environmental Quality Act, challenging the plaintiff's development. *Ludwig*, 37 Cal. App. 4th at 12, 18. While the plaintiff acknowledged that the *filing parties'* acts constituted protected petitioning activity, it argued that its suit was not barred by the anti-SLAPP statute or the litigation privilege because "it [was] not suing" the filing parties "and therefore [was] not attacking *their* exercise of any protected right." *Id.* at 16–17 (emphasis added). It asserted that the defendant could be sued for "*encourag[ing]*" such filings because he "did not, personally, perform any of the challenged acts" and therefore he "[could not] claim any protection." *Id.* (emphasis added). The court rejected this argument, holding that "[a] person can exercise his own right by supporting the forceful activities of others." *Id.* at 18. Moreover, "it would be absurd to hold that [an] … opponent" who initiates formal proceedings "is protected," while one who merely "lend[s] moral support" is not. *Id.* Thus, section 47(b) and the anti-SLAPP statute protect anyone "who supports and encourages the filing of a lawsuit" or administrative complaint. *Id.* For this reason, the court granted the defendant's anti-SLAPP motion. *Id.* at 18–19.

Likewise here, Plaintiff's allegations that Sutter "encouraged" a patient's estate to "fil[e] an unfounded … complaint" with the MBC and a "suit against [Plaintiff] in the Superior Court" target core petitioning activity protected by the anti-SLAPP statute and the litigation privilege. Accordingly, for this reason too, Sutter has met its burden under prong one.

          **3.**      **Plaintiff Targets Conduct in Furtherance of the Exercise of the Right of Free Speech in Connection with an Issue of Public Interest**

Plaintiff's state law claims also fall within the anti-SLAPP statute's compass because the statute protects *any* "conduct in furtherance of the exercise of the constitutional right of petition or … free speech in connection with a public issue or an issue of public interest." Cal. Code of

1    Civ. Proc. § 425.16(e)(4). This "applies where the conduct underlying the plaintiff's claims

2    consists of pure speech," including "private communications, so long as they concern a public

3    issue." *Sonoma Media Inv., LLC v. Super. Ct.*, 34 Cal. App. 5th 24, 34 (2019). Section 425.16's

4    definition of "public interest" is "broadly construed to include … private conduct that impacts a

5    broad segment of society." *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th

6    515, 523 (2006).

7            Criticism of a physician's acumen is paradigmatic speech concerning a public issue. *Cal.*

8    *Eye Inst. v. Super. Ct.*, 215 Cal. App. 3d 1477, 1483 (1989). *Yang v. Tenet Healthcare Inc.*, 48

9    Cal. App. 4th 939 (2020) is particularly instructive. There, the plaintiff-physician sued a hospital,

10   "its medical staff, and individual doctors" for "falsely stating to 'healthcare providers'" that the

11   plaintiff's "behavior and medical ethics were below applicable standards" and "that she was

12   'under investigation.'" *Id.* at 943. The court held that these statements enjoyed anti-SLAPP

13   protection for two reasons. *Id.* at 947–48. First, communications regarding "the qualifications,

14   competence, and professional ethics of a licensed physician" clearly relate to a "public issue." *Id.*

15   at 947. Second, the court held that these communications involved the public because they warned

16   others in the healthcare field of concerns that a physician is "unqualified." *Id.* at 948–49. Thus,

17   these communications, directly or indirectly, were "aimed at protecting members of the public

18   who might see a doctor" and thus qualified for anti-SLAPP protection. *Id.*

19           Here, Plaintiff asserts that "Sutter and/or its agents serving on the 'MBC'" engaged in

20   trade libel by "ma[king] the defamatory statement" to "credentialing agents for [health insurance

21   companies]" that Plaintiff had "unresolved disciplinary issues with various … peer review panels

22   and the MBC" and by the MBC's "placing" this information on its website." SAC ¶¶ 358–60, 331.

23   In a similar vein, Plaintiff alleges that Sutter defamed him by "'warning' prospective physician

24   partners and employees about [Plaintiff's] ongoing medical malpractice …, 'peer review' and

25   'MBC' disciplinary problems." *Id.* ¶ 331. As in *Yang*, such alleged communications relate to a

26   "public issue" and are "aimed at protecting members of the public who might see a doctor." 48

27   Cal. App. 4th at 947, 949. As such, these statements are protected by the anti-SLAPP statute

28   because they are "in furtherance of the exercise of the constitutional right of petition or … free

speech in connection with a public issue or an issue of public interest." Cal. Code of Civ. Proc. § 425.16(e)(4). Accordingly, for this reason also, Sutter has met its burden under prong one.

### C.   Prong 2: Plaintiff Cannot Establish a Probability of Success on the Merits

All of Plaintiff's state law claims rest on five core allegations. First, that Sutter "filed, pursued and perpetuated … [a] Peer Review Action" against him. SAC ¶ 331. Second, that Sutter "published to the [NPDB]" and the MBC an "Adverse Action Report" regarding the peer review proceeding against him. *Id.* ¶¶ 72–73. Third, that Sutter filed "false declarations" during the lawsuit that Plaintiff filed against Drs. Stollman and Perry. *Id.* ¶¶ 181, 109, 220, 234, 332. Fourth, that Sutter "encouraged" a patient's estate to "fil[e] [a] … complaint" with the MBC and a civil lawsuit "against [Plaintiff]." *Id.* ¶¶ 87, 104–05. Fifth, that Sutter "made … defamatory statements" to "credentialing agents" that Plaintiff had "unresolved disciplinary issues with various … peer review panels and the MBC" and "plac[ed]" this information on its website." *Id.* ¶¶ 358–60, 331. Plaintiff cannot meet his burden of showing a probability on the merits regarding the first four allegations because this conduct is protected by Civil Code section 47(b) and Cal. Bus. & Prof. Code section 805(j). Plaintiff likewise cannot show a probability of success on his fifth allegation of defamation because he cannot show that these statements were false or made with actual malice.

### 1.   Plaintiff Cannot Establish a Probability of Success Regarding His Peer Review and Adverse Action Report Allegations, His Allegations of "False Declarations" in Litigation, or His Allegations that Sutter "Encouraged" Others to File Complaints Against Him Because These Acts Are Subject to the Litigation Privilege's Absolute Protection

When a challenged act falls within Cal. Civil Code section 47(b)'s "litigation privilege, the trial court should grant an anti-SLAPP motion." *Laker*, 32 Cal. App. 5th at 769. For the reasons explained in Part II–B–2, *supra*, four of Plaintiff's core allegations—that Sutter "filed, pursued and perpetuated … [a] Peer Review Action" against Plaintiff,[5] "published to the [NPDB]" and the MBC an "Adverse Action Report,"[6] filed "false declarations" during Plaintiff's earlier lawsuit,[7]

---

[5] SAC ¶ 331.

[6] *Id.* ¶ 72.

[7] *Id.* ¶¶ 72–73, 181, 109, 220, 234, 332.

1  and "encouraged" a patient's estate to "fil[e] [a] … complaint" with the MBC and a civil lawsuit

2  "against [Plaintiff]"[8]—all constitute acts that were absolutely protected by Civil Code section

3  47(b). Moreover, Plaintiff's claims regarding Sutter's Business & Professions Code section 805

4  report to the MBC is barred by the statute itself, which explicitly states that "[n]o person shall

5  incur any civil or criminal liability as the result of making any report required by this section."

6  Cal. Bus. & Prof. Code § 805(j). Thus, Plaintiff cannot meet his burden of demonstrating a

7  probability of success on the merits of any of these claims.

**2.   Plaintiff Cannot Establish a Probability of Success Regarding His Defamation Claims**

**a.   Plaintiff Must Prove Actual Malice**

11      Plaintiff's only remaining core allegation is his assertion that Sutter "made … defamatory

12  statements" to "credentialing agents" that Plaintiff had "unresolved disciplinary issues with

13  various … peer review panels and the MBC" and the MBC "plac[ed]" this information on its

14  website." SAC ¶¶ 358–60, 331. Plaintiff posits that these "defamatory statement[s]" "impugn[ed]

15  his professional reputation" which caused him "to suffer damages to his person" and "reputation,"

16  including "actual and prospective lost profits." *Id.* ¶¶ 360–61, 394.

17      These are claims for "trade libel"—the "intentional disparagement of the quality of [the

18  plaintiff's professional] services … that results in pecuniary damage to the plaintiff." *J-M Mfg.*

19  *Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 97 (2016). This is true regardless of the

20  label Plaintiff employs because in identifying trade libel cases, "[i]t is the gravamen of the cause

21  of action rather than its designation that is controlling." *McNair v. City & Cnty. of San Francisco*,

22  5 Cal. App. 5th 1154, 1172 (2016). This is important because "[t]o constitute trade libel the

23  statement must be made with actual malice, that is, with knowledge that it was false or made with

24  reckless disregard for whether it was true or false." *J-M Mfg. Co.*, 247 Cal. App. 4th at 97. A trade

25  libel plaintiff also must prove such "actual malice" by "clear and convincing evidence."

26  *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1350 (1998). This is "a heavy burden, far in

---

[8] *Id.* ¶¶ 87, 104–05.

excess of the preponderance sufficient for most civil litigation." *Christian Res. Inst. v. Alnor*, 148 Cal. App. 4th 71, 84 (2007). This is identical to the standard imposed on public officials which limits defamation damages to cases where the plaintiff proves by "clear and convincing evidence" that a statement was uttered "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

Moreover, even if these were not trade libel allegations, Plaintiff would still be required to prove actual malice for two additional reasons. First, the targeted communications are protected by California Civil Code section 47(c)'s common interest privilege. Section 47(c) protects statements "made in good faith on a subject in which the speaker and hearer share[] an interest or duty." *Kashian*, 98 Cal. App. 4th at 914. "[T]he privilege involves a two-step analysis." *Id.* at 915. The defendant must show that "the statement was made on a privileged occasion." *Id.* If so, "the burden shifts to the plaintiff to show the defendant made the statement with malice." *Id.* Malice means "actual malice" as defined by the *N.Y. Times* Court. *Roemer v. Retail Credit Co.*, 3 Cal. App. 3d 368, 371–72 (1970).

This privilege is quite broad. For example, the court in *Institute of Athletic Motivation v. University of Illinois* found it protected communications between a "physical education" instructor and "professional athletic organizations" criticizing the plaintiff's "'sports-specific' psychological test." 114 Cal. App. 3d 1, 4 (1980). A "common interest" existed because all the parties shared a "special concern for the subject matter of the communication." *Id.* at 12–13. It is also settled that the common interest privilege protects statements regarding a professional's "fitness-for-duty." *Espinoza v. City of Imperial*, 2009 WL 10671316, at *14 (S.D. Cal. Mar. 4, 2009). Here, Plaintiff alleges that alleged statements were directed at "credentialing agents" and patients. SAC ¶¶ 358–60, 331. Such recipients plainly share a "special concern for the subject matter"—Plaintiff's "fitness-for-duty" as a physician. As such, section 47(c)'s "actual malice" standard applies.

Second, this standard also applies because the alleged communications are protected by California Civil Code section 43.8. This provides immunity for statements made "to aid in the evaluation of the qualifications, fitness, character, or insurability of a practitioner of the healing or veterinary arts." To defeat this privilege, a plaintiff must prove that any allegedly defamatory

1 | communications were "made with actual malice." *Hassan v. Mercy Am. River Hosp.*, 31 Cal. 4th

2 | 709, 718 (2003). Here, Plaintiff's defamation claims rest on alleged statements made to

3 | credentialling agents that Plaintiff "had a number of unresolved disciplinary issues with various

4 | healthcare company peer review panels and the 'MBC' which made him a liability to approve for

5 | provider status." SAC ¶ 358. Because the alleged communications were made "to aid in the

6 | evaluation" of Plaintiff's "qualifications, fitness, character," and "insurability," they enjoy

7 | section 43.8's protection.

8 | ### b.   Plaintiff Cannot Prove Actual Malice

9 | Plaintiff's trade libel allegations assert that Sutter defamed him by stating that Plaintiff

10 | "had a number of unresolved disciplinary issues with various healthcare company peer review

11 | panels and the 'MBC' which made him a liability to approve for provider status." SAC ¶ 358. To

12 | meet his burden of demonstrating a probability of success on these claims, Plaintiff must present

13 | "clear and convincing" admissible evidence that this statement was "false" and that it was made

14 | "with knowledge that it was false or made with reckless disregard for whether it was true or false."

15 | *J-M Mfg. Co.*, 247 Cal. App. 4th at 97; *accord N.Y. Times*, 376 U.S. at 280. Such proof is required

16 | because "Courts must take into consideration the applicable burden of proof in determining

17 | whether the plaintiff has established a probability of prevailing" under the second prong of the

18 | anti-SLAPP analysis. *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1166–67 (2004). This bar is

19 | impossible for Plaintiff to clear for two reasons.

20 | First, Plaintiff's trade libel claims fail because the statement was objectively *true*. "The

21 | *sine qua non* of recovery for defamation ... is the existence of a falsehood." *Letter Carriers*, 418

22 | U.S. at 283. But here, Plaintiff admits that he was "subjected to … disciplinary investigations by

23 | Peer Review Panels" and that he "resign[ed]" his admitting privileges "under threat of Peer

24 | Review and 'MBC' discipline" while such proceeding was pending. SAC ¶¶ 71, 116. Thus, by his

25 | own admission, "unresolved disciplinary issues" existed because the peer review proceeding never

26 | reached a decision on the merits due to Plaintiff's resignation. *See id.* Moreover, "[t]he primary

27 | purpose of peer review is to protect the public by excluding from the practice of medicine those

28 | physicians who are incompetent, provide substandard care or engage in unprofessional conduct."

1  *Stiger v. Flippin*, 201 Cal. App. 4th 646, 655 (2011). Accordingly, a physician who "resign[ed]

2  under threat of Peer Review," leaving allegations of misconduct unresolved, necessarily presents a

3  "liability" with regard to the doctor's "provider status." As such, Plaintiff cannot show that the

4  statement was "false"—much less prove by clear and convincing evidence that it was made with

5  actual malice.

6        Second, even if Plaintiff could show that the statement was deficient in some respect, his

7  trade libel claims would still fail. To defeat a defamation claim, a "defendant need not prove the

8  literal truth of the allegedly libelous accusation, so long as the imputation is substantially true to

9  justify the 'gist or sting' of the remark." *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th

10  572, 581 (1996). "California law permits the defense of substantial truth and would absolve a

11  defendant even if she cannot 'justify every word of the alleged defamatory matter; it is sufficient if

12  the substance of the charge be proved true, irrespective of slight inaccuracy in the details.'"

13  *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 154 (2013) (quoting *Masson v. New

14  Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991)). This doctrine "overlooks minor inaccuracies"

15  and immunizes statements from liability "so long as 'the substance, the gist, the sting of the

16  libelous charge is justified.'" *Hughes v. Hughes*, 122 Cal. App. 4th 931, 936 (2004). Substantial

17  truth "is a complete defense against civil liability, regardless of bad faith or malicious purpose."

18  *Ringler Assoc. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1180 (2000).

19        Again, Plaintiff admits that he was "subjected to … disciplinary investigations by Peer

20  Review Panels" and that he "resign[ed]" his admitting privileges while such proceedings were

21  pending. SAC ¶¶ 71, 116. Thus, the "gist" and "sting" of the alleged statement—that "disciplinary

22  issues" raised by these proceedings remained "unresolved" and posed questions regarding

23  Plaintiff's "provider status"—is true. Accordingly, Plaintiff cannot adduce *any* admissible

24  evidence demonstrating a probability of success on the merits of his trade libel claims—much less

25  the clear and convincing evidence of actual malice required to sustain such claims.

26  / / /

27  / / /

28  / / /

III.    **CONCLUSION**

For the foregoing reasons, the Court should grant Sutter's anti-SLAPP motion and strike all of Plaintiff's state law causes of action.

DATED: April 13, 2022                    BARTKO ZANKEL BUNZEL & MILLER
                                          A Professional Law Corporation

                                          By:  _____
                                               Michael D. Abraham
                                               Attorneys for Defendants SUTTER BAY MEDICAL
                                               FOUNDATION, SUTTER BAY HOSPITALS (d.b.a.
                                               Alta Bates Summit Medical Center), NEIL
                                               STOLLMAN, ROD PERRY, and PHILIP RICH